UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

HANS TIEFENTHALER, CASE NO. 1:22-cv-11132-RGS

Plaintiff,

v.

USHEALTH ADVISORS, LLC,

Defendant.
_______________________________________/

**DEFENDANT USHEALTH ADVISORS, LLC'S**
**MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS**

## PRELIMINARY STATEMENT

Plaintiff Hans Tiefenthaler attempts to assert a single count against Defendant USHEALTH Advisors, LLC ("USHA") for violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA"), in particular the national "do-not-call" rules, over two text messages he alleges he received on his cellular telephone from USHA or – in two or three references in his Complaint – "agents" of USHA.[1] But, USHA is not within this Court's personal jurisdiction, and dismissal is therefore required. Plaintiff cannot make a *prima facie* showing of personal jurisdiction against USHA, even if one reads the Complaint generously to allege vicarious liability.

It is undisputed that USHA is not "at home" in Massachusetts or otherwise within this Court's general jurisdiction. It is a Texas limited liability company with a principal place of business in Texas. Presumably for this reason, Plaintiff does not allege general personal jurisdiction, and instead alleges that USHA is within only the Court's *specific* personal jurisdiction. But that, too, is lacking. To begin with, there cannot be any specific personal jurisdiction because that would require that, in texting Plaintiff, someone purposefully and voluntarily directed their activities toward Massachusetts. The Complaint does not permit any such finding because Plaintiff's telephone number is a ***Wisconsin*** telephone number. Thus, to the extent anyone called his telephone number, they thought they were calling someone in (and directing their conduct toward) the State of Wisconsin, and therefore there are no intentional or voluntary jurisdictional contacts with the Commonwealth of Massachusetts required for specific jurisdiction. Indeed,

---

[1] Plaintiff has filed at least six other lawsuits under the TCPA. *See Tiefenthaler v. HAC Funding LLC*, No. 1:2022-cv-11137 (D. Mass.); *Tiefenthaler v. Auto Consumer Solutions LLC*, No. 1:2021-cv-10315 (D. Mass.); *Tiefenthaler v. Growing in Health, LLC*, No. 1:2020-cv-10770 (D. Mass.); *Tiefenthaler v. Intercontinental Hotels Group Resources, LLC*, No. 1:2020-cv-10689 (D. Mass.); *Tiefenthaler v. Target Corporation*, No. 1:2019-cv-12412 (D. Mass.); *Tiefenthaler v. Progressive Direct Insurance Company*, No. 1:2019-cv-11632 (D. Mass.); *Tiefenthaler v. Amerisave Mortgage Corp.*, No. 1:2019-cv-02862 (N.D. Ga.).

USHA is not licensed in Massachusetts, and thus it does not even sell or market insurance in or direct any conduct toward Massachusetts.

Furthermore, even if somehow there could be jurisdictional contacts with Massachusetts arising from the calls to Plaintiff's cellular telephone number with a Wisconsin area code, Plaintiff fails to satisfy his burden of making a *prima facie* showing that such contacts establish personal jurisdiction over USHA. Contrary to Plaintiff's allegations that USHA sent the text messages to him, USHA does not market directly and did not text Plaintiff.

To the dubious extent the Complaint even implicates vicarious liability under the TCPA based on a purported "agent" of USHA – an independent insurance advisor – having placed the text messages to him, there is no basis to impute such jurisdictional contacts to USHA. All Plaintiff does in this regard is conclusorily and inconsistently state a few times that the text messages he repeatedly alleges were sent by USHA were sent by USHA's "agents." Far more is needed to plausibly allege an agency relationship. Completely missing from the Complaint is any allegation of fact – well-pleaded or otherwise – of control by USHA, which is essential for the finding of any agency relationship, or the basis for any other common law theory of agency (such as apparent authority or ratification). Also missing entirely is the required showing, in addition to an agency relationship, that USHA authorized the purported agent(s) to violate the TCPA.

Regardless, notwithstanding these deficiencies at the pleading stage that preclude a *prima facie* showing of personal jurisdiction, USHA submits sworn, irrefutable testimony that precludes any such showing or any finding of personal jurisdiction by the Court. For all these reasons, personal jurisdiction is lacking and the Complaint should be dismissed.

**STATEMENT OF ALLEGED FACTS**

Plaintiff alleges that he received at least two text messages "from the Defendant." *See*

Compl. at ¶¶ 19-21. Plaintiff alleges that he responded to the text messages and "then got a policy offering following up on the text messages" from an insurance advisor named Harley Owens. *See id.* at ¶¶ 22-25. Plaintiff alleges the text messages were sent to his cellular telephone number "608-XXX-0111," which "has been on the National Do Not Call List for more than two years." *Id.* at ¶ 15. Plaintiff commenced this putative class action lawsuit on July 14, 2022. *See id.*

## ARGUMENT

### I. APPLICABLE LEGAL STANDARDS

"On a motion to dismiss for want of personal jurisdiction, the plaintiff ultimately bears the burden of persuading the court that jurisdiction exists." *Astro-Med, Inc. v. Nihon Kohden Am., Inc.*, 591 F.3d 1, 8 (1st Cir. 2009). "When a district court rules on a motion to dismiss for lack of personal jurisdiction without holding an evidentiary hearing . . ., the 'prima facie' standard governs its determination." *United States v. Swiss Am. Bank, Ltd.*, 274 F.3d 610, 618 (1st Cir. 2001). A court cannot "credit conclusory allegations or draw farfetched inferences." *Ticketmaster-N.Y., Inc. v. Alioto*, 26 F.3d 201, 203 (1st Cir. 1994). "Instead, the prima facie showing of personal jurisdiction must be based on evidence of specific facts set forth in the record." *Boit v. Gar-Tec Prods., Inc.*, 967 F.2d 671, 675 (1st Cir. 1992) (internal quotation and bracketed text omitted). Thus, the plaintiff "may not rely on the mere allegations of its complaint, but must point to specific facts in the record that support those allegations." *Jet Wine & Spirits, Inc. v. Bacardi & Co.*, 298 F.3d 1, 8 (1st Cir. 2002).

Accordingly, the plaintiff "must go beyond the pleadings and make affirmative proof." *Vapotherm, Inc. v. Santiago*, 38 F.4th 252, 257 (1st Cir. 2022) (quoting *Boit*, 967 F.2d at 675). "It is the plaintiff's obligation to proffer facts that adequately make out a case for jurisdiction before any burden devolves upon the defendant to proffer contrary facts." *Motus, LLC v. CarData*

*Consultants, Inc.*, 23 F.4th 115, 124 (1st Cir. 2022). However, when the defendant does proffer facts, "[t]he Court must . . . accept as true the uncontradicted facts put forward by the defendant." *Killion v. Commonwealth Yachts*, 421 F. Supp. 2d 246, 252 (D. Mass. 2006) (citing *Mass. School of Law at Andover, Inc. v. Am. Bar Ass'n*, 142 F.3d 26, 34 (1st Cir. 1998)).

## II. THERE IS NO PERSONAL JURISDICTION OVER DEFENDANTS

### A. The Court Lacks General Personal Jurisdiction

General jurisdiction allows a court to hear any claim against a defendant, irrespective of the underlying claim's connection to the forum state, and applies when a defendant's "affiliations with the State are so continuous and systematic as to render them essentially at home in the forum State." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (internal quotation omitted). The Supreme Court has clarified the limited bases that would permit general jurisdiction:

> only a limited set of affiliations with a forum will render a defendant amenable to all-purpose jurisdiction there. For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile; for a corporation, it is an equivalent place, one in which the corporation is fairly regarded as at home. With respect to a corporation, the place of incorporation and principal place of business are paradigm bases for general jurisdiction.

*Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014) (quotations and modifications omitted).

To begin with, Plaintiff does not allege that USHA is within the Court's general personal jurisdiction, alleging only that specific jurisdiction exists. *See* Compl. at ¶ 9. Nonetheless, in an abundance of caution, USHA observes that none of the bases for general jurisdiction applies. USHA is a limited liability company organized under the laws of the State of Texas and has its principal place of business in Texas. *See* Declaration of Dean Whaley at ¶¶ 3-4. And, to the extent it is relevant, USHA does not have any contacts with the Commonwealth of Massachusetts that might otherwise support a finding of general jurisdiction. *See* Whaley Decl. at ¶¶ 5-10.

Accordingly, this Court has no general personal jurisdiction over Defendants.

**B. The Court Lacks Specific Personal Jurisdiction**

Specific jurisdiction permits a court to hear a particular lawsuit that arises out of or relates to the defendant's contacts with the forum. *Daimler*, 571 U.S. at 127. "To determine whether specific jurisdiction exists, [the court must] look to three criteria: relatedness, purposeful availment, and reasonableness." *Motus*, 23 F.4th at 122. As the First Circuit has explained:

> First, the plaintiff's claim must directly arise from or relate to the defendant's activities in the forum. Second, the defendant's forum-state contacts must represent a purposeful availment of the privilege of conducting activities in that state. Finally, the exercise of specific jurisdiction in the forum must be reasonable under the circumstances.

*Id.* (internal quotations and citations omitted).

"The inquiry whether a forum State may assert specific jurisdiction over a nonresident defendant 'focuses on the relationship among the defendant, the forum, and the litigation.'" *Walden v. Fiore*, 571 U.S. 277, 283-84 (2014) (quoting *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 775 (1984)). It is black letter law that the "'minimum contacts' necessary to create specific jurisdiction . . . . must arise out of contacts that the 'defendant *himself*' creates with the forum State." *Id.* at 284 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)). The Supreme Court has "consistently rejected attempts to satisfy the defendant-focused 'minimum contacts' inquiry by demonstrating contacts between the plaintiff (or third parties) and the forum State." *Id.* (collecting cases). There are no such jurisdictional contacts between USHA and Massachusetts.

"For a person to 'make' a call under the TCPA, the person must either (1) directly make the call, or (2) have an agency relationship with the person who made the call." *Abante Rooter & Plumbing v. Farmers Group, Inc.*, No. 17-CV-03315-PJH, 2018 WL 288055, *4 (N.D. Cal. Jan.

4, 2018) ("*Abante I*"). Although Plaintiff makes isolated and conclusory references to "agents," (*see* Compl. at ¶¶ 28, 46, 48), Plaintiff expressly alleges throughout his Complaint, and in particular in support of personal jurisdiction, that it was USHA that supposedly placed the calls/text messages to him. *See id*. at ¶ 9 ("This Court has specific personal jurisdiction over USHealth Advisors LLC because the company makes telemarketing calls into this District."). Under either theory, however, Plaintiff cannot establish the Court has specific personal jurisdiction over USHA.

**i. There Are No Jurisdictional Contacts with Massachusetts**

Plaintiff cannot possibly establish specific personal jurisdiction in this case, regardless of whether it is sought to be based upon direct contacts by USHA or by imputation, for one fundamental reason: there are ***no*** jurisdictional contacts with Massachusetts. This is fatal to any exercise of specific personal jurisdiction because "[t]he purposeful availment inquiry . . . focuses on the defendant's intentionality. This prong is only satisfied when the defendant purposefully and voluntarily directs his activities toward the forum so that he should expect, by virtue of the benefit he receives, to be subject to the court's jurisdiction based on these contacts." *Swiss Am. Bank*, 274 F.3d at 623-24. That showing cannot be made here because Plaintiff's cellular telephone number is not even a Massachusetts telephone number, but one with a ***Wisconsin*** area code.

"In determining whether phone calls or text messages are sufficient contacts with the forum state, district courts have focused on whether the defendant 'knew or should have known' that its calls or text messages were sent into [the forum state]." *Fishman v. Subway Franchisee Advert. Fund Tr., Ltd.*, No. 2:19-CV-02-444-ODW-ASX, 2019 WL 6135030, *6 (C.D. Cal. Nov. 19, 2019) (quoting *Washington Shoe Co. v. A-Z Sporting Goods Inc.*, 704 F.3d 668, 678 (9th Cir. 2012) ("Where [defendant] knew or should have known that [plaintiff] is a Washington company, [defendant's] intentional acts were expressly aimed at the state of Washington.")). The same

analysis applies even if a purported agent's contacts are being imputed to a purported principal, because "the Court must still determine if [the agents'] conduct is sufficient to establish personal jurisdiction." *Fishman*, 2019 WL 6135030 at *6. Thus, a key factor in the "purposeful availment" analysis is the area code of the telephone number that was called. *See id.* (collecting cases). *See also McDermet v. Porch.com, Inc.*, No. CV 19-10284-RGS, 2019 WL 1619867, *2 (D. Mass. Apr. 16, 2019) (Stearns, J.) (finding allegation that defendant or its agents called Plaintiff's telephone numbers "that have a Massachusetts area code (978) . . . sufficient to establish that they purposefully availed themselves of the privilege of doing business in the Commonwealth").

Plaintiff's telephone number has a 608 area code, which is a Wisconsin – not Massachusetts – area code. *See* Compl. at ¶ 15 ("The Plaintiff's phone number, 608-XXX-0111, has been on the National Do Not Call List for more than two years."). More specifically, "[t]he 608 area code covers much of southwestern Wisconsin, including the capital city of Madison . . . ." *See* https://en.wikipedia.org/wiki/Area_code_608 (a true and correct copy is attached hereto as Exhibit A). The North American Numbering Plan U.S. Area Code Map for Wisconsin reflects the geographic location associated with the 801 area code. *See* https://nationalnanpa.com/area_code_maps/display.html?wi (a true and correct copy is attached hereto as Exhibit B).

Thus, to the extent anyone called his telephone number, they thought they were calling someone in (and directing their conduct toward) the State of Wisconsin. There is no evidence – or the possibility of a plausible allegation – that in sending a text message to Plaintiff at his *Wisconsin* telephone number, anyone doing so knew or should have known that they were sending text messages into the Commonwealth of Massachusetts, which is necessary for purposeful availment. To the contrary, USHA does not direct any marketing or sales activity whatsoever to people

believed to be Massachusetts residents because it is not licensed as an insurance agency (or otherwise) in Massachusetts. *See* Whaley Decl. at ¶ 11.

On this record, "[t]here is nothing before the Court that suggests in any way that [USHA or any purported agent] either knew or should have known that its text messages were sent into [Massachusetts] and received by a resident of [Massachusetts]. Given the nature of the services provided by [USHA] . . . and a cell phone number . . . that is not a [Massachusetts] telephone number, there is no basis for a finding that [anyone] directly targeted [Massachusetts] through the text messages." *Abedi v. New Age Med. Clinic PA*, No. 1:17-CV-1618 AWI SKO, 2018 WL 3155618, *5 (E.D. Cal. June 25, 2018). Other courts have similarly ruled in TCPA cases that where the telephone number called has an area code for an area outside the forum state, in the absence of any countervailing evidence, there can be no specific personal jurisdiction.[2] "In sum,

---

[2] *See, e.g.*, *Green v. Ox Car Care, Inc.*, No. 4:20-CV-708-BJ, 2021 WL 3883624, *5 (N.D. Tex. July 22, 2021) (dismissing complaint for lack of personal jurisdiction because "the alleged unwanted phone calls to Plaintiff were not targeted to a Texas phone number. Rather, the actions of Ox Car were targeted to a phone number with a New Hampshire area code."); *Cunningham v. Mark D. Guidubaldi & Assocs., LLC*, No. 4:18-CV-00118-ALM-CAN, 2019 WL 1119365, *7 (E.D. Tex. Jan. 11, 2019) (ruling court could not find defendant targeted forum state where the contacted phone numbers had Tennessee area code), report and recommendation adopted, 2019 WL 1117915 (E.D. Tex. Mar. 11, 2019); *Eisenband v. Starion Energy, Inc.*, No. 9:17-cv-80195-KAM, 2018 U.S. Dist. LEXIS 79572, *15–17 (S.D. Fla. May 11, 2018) (holding there was no express aiming at Florida where calls were made to a New Jersey area code, defendant submitted declaration it conducted no business in Florida, and no evidence indicated defendant knew it was calling individual in Florida); *Kern v. VIP Travel Servs.*, No. 1:16-CV-8, 2017 WL 1905868, *5 (W.D. Mich. May 10, 2017) (dismissing for lack of personal jurisdiction because "Plaintiffs' telephone numbers have New York area codes," meaning "[t]here is no indication that [defendant's purported agent] purposefully directed any of its calls to Michigan"); *Hastings v. Triumph Prop. Mgmt. Corp.*, No. 15-CV-312-LAB (RBB), 2015 WL 9008758, *2 (S.D. Cal. Dec. 15, 2015) ("There is no reason to believe Triumph knew Plaintiffs were California residents, or even that Triumph should have known this. . . . The only known information Triumph had about [Plaintiffs] — their phone number — identified them as possible Arizona residents, not California residents."); *Cunningham v. Caribbean Cruise Line, Inc.*, No. 3:14-CV-01040, 2015 WL 475271, *6 (M.D. Tenn. Feb. 4, 2015) (holding defendant did not purposefully direct conduct to Tennessee by calling cell phone number associated with North Carolina area code); *Michaels v. Micamp Merch. Servs.*, No. CIV.A. 13-191E, 2013 WL 5970340 (W.D. Pa. Nov. 8, 2013) (holding there was no express

because [the purported caller] did not directly target [Massachusetts], there was no express aiming and thus, no purposeful direction. ***Without purposeful direction, there is no personal jurisdiction***." *Abedi*, 2018 WL 3155618 at *5 (emphasis added) (internal citations omitted). Again, especially because USHA is not even licensed to sell insurance in Massachusetts, it cannot be found to have purposefully directed or caused anyone to purposefully direct any telemarketing to the Commonwealth of Massachusetts (with respect to Plaintiff or otherwise). *See* Whaley Decl. at ¶ 11.

As another court found in an exceedingly similar context, where two Pennsylvania insurance agencies not licensed in Illinois (the forum state) called an Illinois resident with a Pennsylvania telephone number,

> Prossen and Walling only sold policies for states in which they held licenses. In making calls to Abramson, then, they directed their Pennsylvania-based insurance business at a Pennsylvania resident in Pennsylvania, not at Illinois . . . . Even considering the fact they represented themselves as Allstate agents, because Prossen and Walling did not "market[ ] to or solicit[ ] sales in Illinois, or sell[ ] [their] services or products to Illinois customers," the Court cannot find that they purposefully availed themselves of Illinois so as to subject themselves to this Court's jurisdiction.

*Abramson v. Connected Mktg., LLC*, No. 19 C 3711, 2020 WL 1139251, *3 (N.D. Ill. Mar. 9, 2020). The same applies here, and this precludes any exercise of specific personal jurisdiction.

**ii. USHA Has No Direct Jurisdictional Contacts**

Even if any conduct regarding calls to a Wisconsin telephone number, especially when USHA is not licensed to sell insurance in Massachusetts, could somehow be deemed to have been purposefully directed to Massachusetts, there is no evidence that would support Plaintiff's allegations that USHA sent him the text messages. Sworn testimony from USHA establishes that

---

aiming at Pennsylvania where calls were made to Florida area code and no evidence indicated defendant knew that it was calling individual in Pennsylvania).

that ***USHA never sent or placed any text messages to Plaintiff***. *See* Whaley Decl. at ¶ 11-12. In fact, USHA does not directly market to consumers at all. *See id.* at ¶ 12.

**iii. Plaintiff Does Not Allege, Nor Can He Show, Specific Personal Jurisdiction by Agency**

Notwithstanding Plaintiff's express allegation that "[t]his Court has specific personal jurisdiction over [USHA] because ***the company***," *i.e.*, USHA, "makes telemarketing calls into this District," (Compl. at ¶ 9) (emphasis added), to the extent Plaintiff tries to base personal jurisdiction upon an agency relationship – again, assuming there are any jurisdictional contacts with Massachusetts to impute – that, too, fails. The Complaint does not even allege the hints of an agency relationship for which personal jurisdiction may be found, let alone succeed in making a *prima facie* showing. Indeed, Plaintiff does little more than utter the word "agents" a few times.

"For purposes of personal jurisdiction, the actions of an agent may be attributed to the principal." *Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A.*, 290 F.3d 42, 55 (1st Cir. 2002). "Generally, an individual acting as an 'independent contractor,' rather than an agent, does not have the traditional agency relationship with the principal necessary for vicarious liability." *Naiman v. TranzVia LLC*, No. 17-CV-4813-PJH, 2017 WL 5992123, *12 (N.D. Cal. Dec. 4, 2017). As noted previously, a court cannot "credit conclusory allegations or draw farfetched inferences" to find agency, but instead requires factual evidence of such a relationship. *Ticketmaster-N.Y.*, 26 F.3d at 203. *See also Grice v. VIM Holdings Group, LLC*, 280 F. Supp. 3d 258, 279 (D. Mass. 2017) (explaining "conclusory allegations that the defendant controls the corporation are not sufficient" to establish personal jurisdiction) (internal quotation omitted); *Ward v. Auerbach*, No. CV 16-12543-FDS, 2017 WL 2724938, *11 (D. Mass. June 23, 2017) (rejecting conclusory allegations of agency and dismissing for lack of personal jurisdiction where "there is no evidence that [defendants] had an agency relationship of any kind with any of the individual

physicians”).

The Federal Communications Commission issued a declaratory ruling that a party who did not make a telephone call “may be held vicariously liable under federal common law principles of agency for TCPA violations committed by third-party telemarketers,” namely the doctrines of formal agency, apparent authority, and ratification. *In re DISH Network LLC*, 28 F.C.C. Rcd. 6574, 6584 (2013). Under federal common law, an agency relationship requires that the alleged principal have the “right to control the manner and means by which the product is accomplished” by the alleged agent. *Escribano-Reyes v. Pro. Hepa Certificate Corp.*, 817 F.3d 380, 390 n.4 (1st Cir. 2016) (quoting *Cmty. for Creative Non–Violence v. Reid*, 490 U.S. 730, 751-52 (1989)). *See also Marya v. Slakey*, 190 F. Supp. 2d 91, 103 (D. Mass. 2001) (“[T]he right of control by the principal over the agent is an irreducible element of an agency relationship.”); *Canney v. City of Chelsea*, 925 F. Supp. 58, 64 (D. Mass. 1996) (“In examining agency relationships, courts have looked primarily at . . . the right to control the agent’s conduct . . . to determine whether an agency relationship in fact exists.”).

In the specific context of the TCPA, to establish an agency relationship, the alleged principal must have “controlled or had the right to control [the alleged agents] and, more specifically, the manner and means of the [telemarketing] campaign they conducted.” *Thomas v. Taco Bell Corp.*, 879 F. Supp. 2d 1079, 1085 (C.D. Cal. 2012), *aff’d*, 582 F. App’x 678, 679 (9th Cir. 2014) (“[W]e agree with the district judge’s analysis of the evidence under the standard he applied . . . .”). “Federal courts routinely dismiss [TCPA] claims that rely upon vicarious liability at the pleading stage when insufficient facts have been alleged to establish control.” *Powers v. One Techs., LLC*, No. 3:21-CV-2091, 2022 WL 2992881, *3 (N.D. Tex. July 28, 2022) (dismissing TCPA claims). *See also Smith v. Liberty Mut. Ins. Co.*, No. 1:20-CV-11583-ADB, 2021 WL

1581017, *5 (D. Mass. Apr. 22, 2021) ("To survive a motion to dismiss, a complaint alleging that a defendant had control over a third party's actions must put forth more than mere conclusory allegations that a third party was defendant's agent or that defendant had the right to control a third party.") (internal quotation and bracketed text omitted).

Moreover, as the specific jurisdictional contacts must provide the basis for actual agency for purposes of a TCPA claim, to establish personal jurisdiction on this theory, Plaintiff "must do more than establish an agency relationship. [He] must also establish that the purported agent had actual authority to place the unlawful calls," *i.e.*, to place a telephone call in violation of the TCPA or Texas law. *Jones v. Royal Admin. Servs., Inc.*, 887 F.3d 443, 449 (9th Cir. 2018). *See also Declements v. Americana Holdings LLC*, No. CV-20-00166-PHX-DLR, 2020 WL 4220075, *1 (D. Ariz. July 23, 2020) ("[E]ven assuming Mr. Berube's actions could be attributed to Mr. Stark, Plaintiff has not shown that Mr. Stark can be held liable for TCPA violations because Plaintiff does not allege that Mr. Berube directed agents use an autodialer in any way that violates the TCPA."); *Rogers v. Postmates Inc.*, No. 19-CV-05619-TSH, 2020 WL 1032153, *4 (N.D. Cal. Mar. 3, 2020) ("[E]ven if the sender was authorized to market on Postmates' behalf, there are no factual allegations suggesting that Postmates knew or reasonably should have known that the sender of the text or any of its agents or sub-agents were violating the TCPA on its behalf.").

Not a single one of these requirements for establishing personal jurisdiction based upon an agency relationship is addressed in the Complaint, let alone plausibly alleged. The Complaint literally does no more than sprinkle the word "agents" a few times in conclusory, fact-free fashion, without any asserted basis or support to render plausible the supposition that someone acting as USHA's agent placed the text messages to Plaintiff. *See* Compl. at ¶¶ 28, 46, 48.

That clearly is not enough under the law to plausibly allege, never mind make a *prima facie*

showing of personal jurisdiction on the basis of, an agency relationship. Rather, "[t]o impute contacts of one entity to another, the court must assess 'the nature of the legal and institutional relationships between them.' Specifically, the court must determine whether the 'degree of control exercised' by one over the other was substantial, and whether one 'can be said to act for and on behalf of the [other].'" *Killion*, 421 F. Supp. 2d at 256 (quoting *Donatelli v. Nat'l Hockey League*, 893 F.2d 459, 468 (1st Cir. 1990)).

Here, as in *Killion*, Plaintiff "simply has not set forth sufficient facts that, taken as true, establish that [the purported sender of a text message] is the agent of [USHA] and that the former's forum-based contacts may be appropriately imputed to the latter" for purposes of personal jurisdiction. *Id.* "Without substantial control over the agent, a principal cannot be found to have purposefully availed itself of a forum based solely upon the unrelated systemic and continuous contacts of that agent. Because there is no" allegation, and certainly no "evidence that the defendant exercised substantial control over [any purported agent] during the relevant time period, the activities of those agents cannot be used to gain . . . jurisdiction over the defendant." *Fiske v. Sandvik Mining & Const. USA, LLC*, No. CIVA 07-CV-40174-FDS, 2009 WL 3163329, *7 (D. Mass. Sept. 25, 2009). As in *Abante*, "[t]he complaint contains no factual allegations about defendant's relationship with the purported callers, much less factual allegations about what control defendant exercised over the callers. . . . ***[P]laintiff must allege facts*** showing that defendant had the right to control the representatives and the manner and the means of the calls they made." 2018 WL 288055 at *4 (emphasis added). No such facts are alleged here.

Nor is agency, as opposed to an ordinary contractual relationship, plausibly stated from the allegation that someone sent a text message to Plaintiff regarding USHA. "[R]easonable third parties frequently encounter scenarios where one party sells or markets the goods or services of

another company without being an agent of that company. For example, when a television station runs an advertisement for Cheerios, reasonable consumers do not automatically understand the television station to be acting as Cheerios' agent." *Shanahan v. Nat'l Auto Prot. Corp.*, No. 1:19-CV-03788, 2020 WL 3058088, *6 (N.D. Ill. June 9, 2020).[3] Thus, just as a conclusory assertion of an agency relationship will not suffice to state a claim for relief, it does not succeed in making a *prima facie* showing of personal jurisdiction. *Shanahan*, 2020 WL 3058088 at *3-6.

**iv. Defendants' Evidence of the Lack of Personal Jurisdiction**

In any event, for the avoidance of doubt, even if Plaintiff had succeed in alleging a *prima facie* showing of a jurisdictional contact with Massachusetts imputable to USHA through agency, the sworn testimony submitted by USHA refutes any such allegation and requires dismissal. USHA avers that it is not licensed to sell insurance in Massachusetts, and therefore does not do so nor does it market or direct any marketing to Massachusetts residents. Whaley Decl. at ¶ 11. Accordingly, USHA, too, has never hired, contracted with, or otherwise authorized anyone to market or sell insurance products to Massachusetts residents by telephone or by any other means. *Id*. USHA has contracts with independent insurance advisors – meaning that they are licensed insurance advisors (or "agents") under their respective states' laws, not that they act as USHA's

---

[3] *See also McDermet v. DirecTV, LLC*, No. CV 19-11322-FDS, 2021 WL 217336, *9 (D. Mass. Jan. 21, 2021) (holding "the fact that defendants contracted with the retailers for various [marketing] services does not, without more, establish" "that the authorized retailers had apparent authority to telemarket to him as defendants' agents"); *Abante*, 2018 WL 288055 at *5 ("It is not enough that each representative identified him or herself as acting on behalf of [the purported principal]. Such allegations say nothing about whether defendant consented to those representations. And, more importantly, such allegations indicate nothing about the amount of control, if any, defendant purportedly exercised over the representatives."); *Clemons v. State Farm Mut. Automobile Ins. Co.*, No. 1:20-CV-1050, 2020 WL 4193997, *4 (C.D. Ill. July 21, 2020) (finding allegations that State Farm contracted with telemarketers to contact customers and callers invoked the State Farm brand, in the absence of "any allegation demonstrating Defendant's control over the alleged telemarketers as to the calls at issue," failed to plausibly allege agency).

agents for purposes of an agency relationship – and these independent insurance advisors sell insurance products underwritten by certain insurance carriers. *Id.* at ¶ 14. These independent insurance advisors are independent contractors, and are not employed by USHA. *Id.* USHA does not control or have the right to control the day-to-day activities of the independent insurance advisors, including how they decide to sell insurance policies. *Id.* at ¶ 15. However, if they choose to use the telephone, their contracts with USHA require them to comply fully with all applicable federal and state laws and regulations, including the TCPA. *Id.*

Under settled principles of law, the requirement that the purported agent act in compliance with the law, including the TCPA, precludes any possible authorization to engage in the alleged conduct and an agency relationship. *See*, *e.g.*, *Jones*, 887 F.3d at 449 (explaining contractual prohibition of "any act or omission that violates applicable state or Federal law, including but not limited to 'robo-calling,'" precluded finding of authority to place telephone calls in violation of the TCPA); *Shanahan*, 2020 WL 3058088 at *4 (finding contractual prevision requiring purported agent "comply with all state and federal laws and regulations applicable to the activities authorized by this Agreement" "cut[s] against Plaintiff's claim that Matrix Warranty directed National Auto to make calls in violation of the TCPA"); *Abante Rooter & Plumbing, Inc. v. Arashi Mahalo, LLC*, No. 18-CV-07311-VC, 2019 WL 6907077, *1 (N.D. Cal. Dec. 19, 2019) ("*Abante II*") ("Abante doesn't contend that Arashi actually granted DTX the authority to use an ATDS or to call merchants on the Do-Not-Call Registry. And for good reason: Arashi presented unrebutted evidence that DTX 'repeatedly represented that its services were compliant with the TCPA.'").

On this record, even if Plaintiff's allegations were somehow deemed sufficient, Plaintiff cannot satisfy his burden to establish personal jurisdiction, and the case should be dismissed on that ground.

## CONCLUSION

For the foregoing reasons, Defendant USHEALTH Advisors, LLC respectfully requests that the Court enter an order dismissing Plaintiff's Complaint and granting any other relief the Court deems appropriate.

DATED: August 19, 2022

Respectfully submitted,

GREENSPOON MARDER LLP

*/s/ Roy Taub*
Jeffrey A. Backman (*pro hac vice*)
Roy Taub (*pro hac vice*)
200 East Broward Boulevard, Suite 1800
Fort Lauderdale, FL 33301
(954) 491-1120
(954) 333-4231 (fax)
jeffrey.backman@gmlaw.com
khia.joseph@gmlaw.com
roy.taub@gmlaw.com
cheryl.cochran@gmlaw.com

PARTRIDGE SNOW & HAHN, LLP
Paul M. Kessimian (BBO No. 660306)
40 Westminster Street, Suite 1100
Providence, RI 02903
(401)861-8200
(401)861-8210 (FAX)
pk@psh.com

*Attorneys for Defendant*
*USHEALTH Advisors, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that this document, filed through the CM/ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing.

*/s/ Roy Taub*